UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES W. COFFEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:14cv2067 |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff James W. Coffel appeals the Social Security Administration's determination that he is not disabled. In essence, he argues that the ALJ erred in discounting the opinions of his treating physicians, failed to find that he met the listing requirement for spine disorders, and erred in relying on a stale opinion from an agency physician. Because I find that the ALJ's opinion was not supported by substantial evidence, I will **REMAND** his decision for further consideration and development of the record consistent with the issues discussed in this opinion.

## BACKGROUND

Readers looking for a more extensive discussion of Coffel's medical record are directed to the detailed summaries in the ALJ's decision (R. 10-36)[1] and in Coffel's opening brief (DE 19). Rather than simply reiterating those summaries, I will give a

---

[1] Citations to the record will be indicated as "R. ___." and indicate the pagination found in the lower right-hand corner of the record because the ECF pagination is mostly illegible.

brief overview of the history of Coffel's health issues and proceedings before the Social Security Administration.

**Coffel's Health**

Since the main reason I am remanding is based on the ALJ's discussion of Coffel's diabetic neuropathy, I will focus only on that condition when discussing Coffel's health. At the outset, diabetic neuropathy is "a common, serious complication of diabetes" whereby nerves in the body – most commonly in the legs and feet – are damaged by the presence of high blood sugar throughout the body. Diabetic Neuropathy, http://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/basics/definition/con-20033336 (last visited Mar. 28, 2016). This condition can lead to pain and numbness in the feet and legs and "can be painful, disabling and even fatal." *Id*. When diabetic neuropathy affects more than one nerve group, it's known as polyneuropathy. Peripheral Nerve Disorders, http://www.mayo.edu/research/departments-divisions/department-neurology/programs/peripheral-nerve-disorders?_ga=1.65128302.1745024633.1427398503 (last visited Mar. 28, 2016).

The record reflects that Coffel sought regular and consistent treatment from a handful of treating physicians. Starting as early as January 2012 and extending until at least August 2013 (when the medical record ends), Coffel's treating physicians diagnosed diabetes with neurological manifestations (*see e.g.* R. 275, 277, 284, 337, 343, 351), polyneuropathy (*see e.g.* R. 277, 282, 286, 290, 372), diabetic neuropathy (*see e.g.* R. 283, 341, 354), along with numerous findings of numbness and tingling in the lower legs

2

and feet bilaterally upon exam (*see e.g.* R. 277, 282, 283) and decreased or absent sensation in the bottom of his feet when a tool called a "monofilament" was dragged across the bottom of his feet (*see e.g.* R. 280, 284, 290, 336, 374). Even the state agency examining physician, who ultimately found Coffel could work, found a 25% decrease in Coffel's sensation at the bottom of his feet back in October 2012. (R. 266.) By April 2013, Coffel's foot was so neuropathic that he did not have to receive local anesthesia to perform a debridement of a foot ulcer, which involves cutting off damaged skin until healthy skin is uncovered. (R. 355.)

In August 2013, two of Coffel's treating physicians – his podiatrist (Dr. Papak) and his treating physician (Dr. Lisoni) – submitted opinions stating that he was not able to work in part due to a recurrent foot ulceration (R. 367, 426), "peripheral neuropathy" (R. 427) and "diabetic polyneuropathy" (R. 367). Recurrent foot ulcerations are a common result of diabetic neuropathy. (Diabetic Wound Care, http://www.apma.org/Learn/FootHealth.cfm?ItemNumber=981 (last visited Mar. 15, 2016).) Both of these physicians had treated Coffel for a period of four or five months prior to rendering their opinions.

**Social Security Administration Proceedings**

Coffel protectively applied for disability insurance benefits on August 29, 2012, alleging a disability onset date of August 11, 2012. (R. 13.) He was denied on both consideration and reconsideration. (*Id*.) After a hearing before an ALJ in which Coffel testified, the ALJ issued a decision denying benefits. (*Id*. at 10-36.) The ALJ employed

3

the standard five-step analysis. (*Id*.) At step one, the ALJ confirmed that Coffel had not engaged in substantial gainful activity since his application date. (*Id*. at 15.) At step two, the ALJ found Coffel suffered severe impairments of chronic obstructive pulmonary disease (COPD), lumbar degenerative disc disease, the late effects of diabetes mellitus, and an obese body habitus. (*Id*.) At step three the ALJ found that Coffel's conditions did not satisfy any listed impairment. (*Id*.) At step four, in analyzing Coffel's residual functional capacity, the ALJ found that Coffel could:

> Occasionally lift 10 pounds maximum, stand and/or walk for up to 2 hours in an 8 hour work period, and sit for up to 6 hours in an 8 hour work period, however, the work must allow alternation of position once every half-hour for a minimum of five minutes. During this period, the claimant would not need to abandon his workstation or lose track of his duties. The claimant can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and/or crawl. The claimant must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and areas of poor ventilation. The claimant must also avoid concentrated exposure to work at unprotected heights, and he requires the use of a cane for ambulation.

(*Id*. at 18.) At step five, the ALJ found Coffel could not perform past relevant work but there were a sufficiently significant number of jobs in the national economy he could perform. (*Id*. at 24.)

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (DE 19 at 2.) Coffel timely sought review of that decision by filing this case. Coffel's arguments on appeal are that the ALJ improperly discounted the opinions of his treating physicians, failed to find that he met the listing requirement for spine disorders, and erred in relying on a stale opinion from an agency physician.

4

The first and third issues are intertwined – basically, Coffel argues that the ALJ erred in accepting an out-dated consultative exam over the more recent and contradictory reports of Coffel's treating physicians. Because I agree with Coffel that the ALJ erred in evaluating the treating physicians' opinions and will remand on that basis, I need not address whether he also erred in finding that Coffel failed to meet the listing requirement for spine disorders.

## DISCUSSION

If an ALJ's findings of fact are supported by "substantial evidence," then they must be sustained. *See* 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Review of the ALJ's findings is deferential. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In making a substantial evidence determination, I must review the record as a whole, but I can't re-weigh the evidence or substitute my judgment for that of the ALJ. *Id*.

In reviewing the ALJ's analysis of Coffel's medical records, one thing that jumps out is that the ALJ simply didn't think that Coffel's diabetic neuropathy was a big deal. But what's less clear is why or how the ALJ reached that conclusion. At bottom, the ALJ seems to believe that Coffel was exaggerating his symptoms in that regard. And while that may be true, his outright rejection of the condition as possibly disabling cannot be squared with the objective test results of a handful of treating physicians and

5

a state agency physician finding the presence of diabetic neuropathy. Combine those findings with a total lack of investigation on the ALJ's part as to what impact Coffel's symptoms have on his ability to work and I'm stumped as to how the ALJ arrived at this conclusion.

Generally speaking, a treating physician's opinion is afforded controlling weight so long as it is well-supported and not inconsistent with other substantial evidence in the record. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). But here, the ALJ discounted the treating physicians' opinions for primarily two reasons: (1) Coffel sought treatment from them "not for symptom exacerbation, but for disability paperwork" (R. 19) and (2) he believed Coffel's record was "very benign" (R. 22) and indicated a general improvement in his level of pain (R. 20-21). The ALJ also appeared to weigh more heavily an opinion from the state agency physician, rendered about a year previously. I'll discuss each of these in turn.

First, in the Seventh Circuit, the mere fact that a claimant or his attorney has solicited a treating physician's opinion is not a valid basis to reject the opinion. *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Warren v. Colvin*, 565 Fed. Appx. 540, 545 (7th Cir. 2014). In fact, as the court in *Puzio* put it:

> [T]he fact that relevant evidence has been solicited by the claimant or her representative is not a sufficient justification to belittle or ignore that evidence. Quite the contrary, in fact. The claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity. How else can she carry this burden other than by asking her doctor to weigh in? Yet rather than forcing the ALJ to wade through a morass of medical records, why not ask the doctor to lay out in plain

6

> language exactly what it is that the claimant's condition prevents her from doing? *Indeed the regulations endorse this focused inquiry.*

*Punzio*, 630 F.3d at 712 (emphasis added, internal citations omitted). So the mere fact that Coffel sought treatment from these physicians to build a record for his disability claim – if that was, indeed, his primary motivation – is not a sufficient reason to reject these opinions or the records supporting these opinions.

The ALJ's second reason, however, warrants more discussion. Essentially, the ALJ found that the opinions are not consistent with the rest of the record because his record was "very benign" and showed improvement in his pain. Generally speaking, if a treating physician's opinion is not well-supported or is inconsistent with other substantial evidence in the record, an ALJ need not accept the opinion. *Schmidt*, 496 F.3d at 842. Here, the ALJ found that Coffel's pain was improving based on the following notation in the record in September 2012: "Compared to last visit, the pain is improved, has lyrica again, able to increase activity slightly, but still has chronic pain and numbness to legs and feet." (R. 274.) I fail to see how the modest level of improvement noted is inconsistent with his reports of numbness and pain in the feet and legs. In fact, later in those same treatment notes, the physician notes that upon examination, Coffel had "numbness and tingling from feet to knees bilaterally" and "no sensation with monofilament" on his feet. (R. 277.) And moreover, this one notation – about a year before the treating physician's opinions – is the only indication of improvement I can find in the record after the alleged onset date. In fact, the rest of the

medical record after this point indicates continued neuropathy and diminished or non-existent sensation in Coffel's feet and sometimes legs.  To pick this one mention of improvement over the rest of the record strikes me as classic cherry-picking.  *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). And the frequency with which his neuropathy is discussed and tested by his treating physicians, particularly given how serious this condition can be, hardly strikes me as "benign."

Equally concerning is the ALJ's reliance on the state agency examining physician's findings.  The ALJ points to these findings as contradicting the treating physician's opinions.  Regarding Coffel's neuropathy, the ALJ found that the state agency physician "noted that the claimant's allegations of neuropathy were not substantiated by the clinical findings."  (R. 21.)  That's actually not the case.  First, the physician never made that statement.  And second, what he did find was that Coffel's sensation at the bottom of his feet was 25% diminished.  (R. 266.[2])  Sure, that's not as much diminution as Coffel had reported, but it doesn't mean that he didn't find any neuropathy present.  Also, although he ultimately found that Coffel was not disabled, he did find that "he does have two chronic progress[ive] diseases and does have some element of disability from these."  (R. 267.)  Given that this opinion was rendered about a year before Coffel's treating physicians rendered their opinions, I don't see how

---

[2] Here, the pagination in the lower right-hand corner is illegible.  This report can be found at ECF pages 268-272, corresponding to record page numbers 263-267.

finding that his "progressive" conditions had progressed to full-blown disability a year later is inconsistent with the state agency doctor's findings.

Moreover, I'm troubled by the fact that the ALJ didn't ask Coffel a single question about the impact of his diabetic neuropathy on his daily life or ability to work during the very short hearing his conducted with Mr. Coffel. Upon questioning by his lawyer, Coffel reported "constant pins and needles" and numbness in his feet and legs. (R. 40.) Although the ALJ asked generally about how Coffel spends his day, he never once asked about his foot pain or numbness, despite that there were references to it all over his medical record. This is particularly surprising given that the ALJ ultimately considered Coffel's neuropathy to be a severe impairment. (Presumably "late effects of diabetes mellitus" includes diabetic neuropathy.) Without more information about the impact Coffel's diabetic neuropathy has on his ability to work, it's hard to see how the ALJ has built an accurate and logical bridge from the evidence to the conclusion that he can still work. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ should have inquired of Coffel about how his diabetic neuropathy impacts his life. Although the ALJ does not have the duty to follow every thread of evidence to its conclusion, an ALJ has a duty to fully develop the record and he didn't do it here. S.S.R. 96–5p; *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir.2009); *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir.2004); *Goins v. Colvin*, 764 F.3d 677, 682 (7th Cir.2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

Ultimately, I don't know whether Coffel's diabetic neuropathy renders him disabled. It isn't difficult to imagine that someone's constant feeling of pins and needles in their feet and/or legs and persistent pain in these areas could prevent them from performing even sedentary work. The ALJ needed to do more to investigate the impact of this condition on Coffel's ability to work, particularly in the face of two treating physicians' opinions that Coffel couldn't work due, at least in part, to this condition. I will therefore remand this matter back to the ALJ for further development of the record consistent with this opinion.

## CONCLUSION

For the forgoing reasons, the decision of the Commissioner is **REMANDED** for further consideration and development of the record consistent with this opinion.

**SO ORDERED**.

ENTERED: March 29, 2016

s/Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT
